IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **BELA DEMTCHOUK,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**OPEN WORLD, INC.,** a Pennsylvania corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Bela Demtchouk ("Demtchouk" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Open World, Inc. ("Open World" or "Defendant") to stop Open World's repeated violations of the Telephone Consumer Protection Act, namely its systemic transmittal of unsolicited, autodialed text messages to cell phone owners, and to otherwise obtain injunctive and monetary relief for all persons injured by Open World's conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Demtchouk is a Saint Anthony, Minnesota resident.

2. Defendant Open World is a Pennsylvania registered corporation headquartered in Westminster, Pennsylvania. Open World does business throughout this District and throughout the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant directed the TCPA violative text messages to Plaintiff into this District.

### TCPA Background

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." See 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received

2

this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R § 64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited Apr. 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. See id.

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

## INTRODUCTION TO OPEN WORLD

17. Open World produces events across the U.S. including Minefaire, an official Minecraft community event.

18. Part of Open World's marketing plan includes sending solicitation text messages en masse to consumers encouraging the purchase of event tickets.

19. Such text messages are sent using an autodialer—equipment with the capacity to store and generate numbers and dial them without human intervention—without prior express written consent as required.

20. In Plaintiff's case, she received numerous autodialed solicitation text messages to her cellular phone from Defendant directing her to purchase tickets for an upcoming Minefaire event, despite her multiple requests that the text messages stop.

4

21. Plainitiff never gave Defendant express written consent to Defendant to text her using an autodialer. In addition, Plaintiff replied "STOP" to Defendant's text messages, but she continued to receive solicitation text messages.

22. The text messages that were sent to Plaintiff were clearly for commercial purposes.

23. In response to these text messages, Plaintiff files this class action lawsuit seeking injunctive relief requiring Open World to cease sending unsolicited, autodialed text messages to consumers' cellular telephone numbers, as well as an award of statutory damages to the members of the Classes to be paid into a common fund, together with pre and post judgment interest.

## COMMON ALLEGATIONS

### Open World Sends Unsolicited Text Messages Using an Autodialer

24. In sending the unsolicited text messages at issue, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a short code, which is consistent with the use of an automatic telephone dialing system to send text messages.

### Open World Does Not Obtain the Express Prior Written Consent Needed to Send Text Messages Using an Autodialer

25. When a consumer visits the Minefaire.com website, they are given the option to purchase tickets for Minefaire events.

26. If the tickets are not available for purchase, Minefaire provides presale access so the consumer can be notified when tickets do become available for purchase:



27. By clicking on "PRESALE ACCESS!" the consumer is encouraged to sign-up for an invitation and must provide their cell phone number:



6

28.     Open World does not clearly and conspicuously provide a consent disclosure that by entering your email and phone number, the consumer will receive numerous autodialed text messages from Defendant.

29.     In fact, the TCPA specifically requires companies like Open World to obtain consumers' prior express written consent by means of "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."  47 C.F.R. § 64.1200(f)(8).

**Plaintiff Received Autodialed Text Messages
to Her Cell Phone Despite Multiple Opt-Out Attempts**

30.     Plaintiff Demtchouk registered her cell phone number on the DNC on January 18, 2018.

31.     On December 10, 2019, Plaintiff Demtchouk provided her cell phone number to Open World in order to find out which tickets would be available for a Minnesota Minefaire event using the presale access provided on minefaire.com.

32.     Plaintiff was not informed in a clear and conspicuous manner that she would receive autodialed text messages from Defendant Open World when she provided her email and phone number on their website.

33.     Plaintiff received an autodialed text message as soon as she registered, providing her with the information about tickets for purchase.

34.     On December 12, 2019 at 8:00 PM, Plaintiff received an autodialed solicitation text message from Defendant using shortcode 82149 stating, "MINECRAFT Fans: Reminder that your Early Bird access for Minefaire opens TOMORROW @ 11:00AM. We'll send your exclusive link the AM! Reply STOP to opt-out."

35.     On December 13, 2019 at 8:46 AM, Plaintiff texted "STOP" to shortcode 82149 as instructed in order to opt-out from receiving additional autodialed text messages.

36.     Despite opting-out from receiving additional autodialed text messages, Plaintiff received an unsolicited, autodialed text message from Defendant using shortcode 75749 on December 23, 2019 at 4:06 PM. The text message solicits the sale of tickets to the Minnesota Minefaire event, offering a 40% discount on the ticket prices.

37.     On February 11, 2020 at 8:24 PM, Plaintiff received another unsolicited, autodialed text from Defendant using shortcode 75749 advertising a Valentine's Day sale with a 40% discount on ticket prices to Minefaire community events.

38.     This text message directs the user to visit http://bit.ly/2SkHBAy in order to learn more about Minefaire events.

39.     By following the above link, the consumer is brought to https://www.minefaire.com/hype36436413.

40. Plaintiff replied "STOP" to shortcode 75749 on February 12, 2020 at 8:13 AM, but she received the message "Sorry, this service is not available."

41. On February 12, 2020 at 8:02 PM, Plaintiff received an unsolicited, autodialed text message from Defendant using shortcode 82149 stating, "MINECRAFT Fans: The V-Day Sale starts tmrw @ 10:00 AM! We'll send ur link in the AM. Check out our latest post here Reply STOP to opt-out http://bit.ly/38gJaVG.

42. http://bit.ly/38gJaVG leads to https://www.minefaire.com/hype36437743. On this page, the consumer is shown which Minefaire events are upcoming, including a message about an upcoming discount on tickets:

> As you know by now, we created a special Valentine's Day ticket offer just for you that opens **TOMORROW at 10:00 AM!**
>
> Look out for an email tomorrow morning with your secret link!
>
> Mine On,
>
> The Minefaire Team
>
> Minefaire, Official MINECRAFT Community Event

43. In response to this unsolicited text message from Defendant, Plaintiff replied "STOP" as soon as she received the text message. This prompted an automated response from shortcode 82149 stating, "Sorry, this service is not available."

44. Plaintiff replied back "STOP" 5 more times, only to receive more messages stating that the service is not available.

45. On February 13, 2020 Plaintiff received yet another unsolicited, autodialed text message from Defendant using shortcode 82149 stating, "MINECRAFT Fan: This is ur 10min warning! The special V-Day batch of tix for Minefaire goes on sale at 10AM. We'll send you the link in 10! Reply STOP to opt-out."

46. Plaintiff immediately replied "STOP" to this unsolicited text message, but she was again notified that the service is not available and then received yet another unsolicited, autodialed text message.

47. Plaintiff again replied "STOP" to the 2nd text message she received on February 13, 2020 and received the automated response, "Sorry this service is not available."

48. Plaintiff believes the text messages were sent using an autodialer because each of the text messages was sent using a short code, all contained generic information, and Plaintiff's stop requests generated immediate responses from Defendant's automated system.

49. The unauthorized text message sent by Open World, as alleged herein, has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Demtchouk's use and enjoyment of her cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

50. Seeking redress for these injuries, Demtchouk, on behalf of herself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited autodialed text messages to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

51. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the date notice is sent to the Class (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using the same platform that was used to send text messages to Plaintiff, (4) for whom Defendant claims it obtained prior

express consent in the same manner as Defendant claims it supposedly obtained prior express consent to text message Plaintiff.

**Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action through the date notice is sent to the Class (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using the same platform that was used to send text messages to Plaintiff, (4) after the person informed Defendant that s/he no longer wished to receive text messages from Defendant.

**Stop Text Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action through the date notice is sent to the Class (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one text message sent by or on behalf of Defendant within a 12-month period; and (3) who requested that Defendant not text them again (4) and received at least two additional text messages from Defendant after requesting for the text messages to stop.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action through the date notice is sent to the Class (1) Defendant (or an agent acting on behalf of Defendant) text messaged more than one time on his/her residential telephone number, (2) within any 12-month period, (3) for the purpose of selling Defendant's products and services.

52.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

53.     Plaintiff anticipates the need to amend the Class definition following appropriate discovery regarding the type of equipment used, the purpose of the text messages, and other appropriate discovery.

11

54. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Autodialed No Consent Class and Autodialed Stop Class;

   (b) whether Defendant continued to send solicitation text messages to Plaintiff and the members of the Autodialed Stop Class using an autodialer;

   (c) whether Defendant implemented adequate policies and procedures for maintaining an internal do not call list;

   (d) whether Defendant's conduct violated the TCPA; and

   (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

56. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

57. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure

compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes, not on facts or law applicable only to Plaintiff.

58. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodial No Consent Class)**

59. Plaintiff repeats and realleges paragraphs 1 through 58 of this Complaint and incorporates them by reference.

60. Defendant and/or its agents sent unwanted solicitation calls and text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

61. These solicitation calls and text messages were sent en masse without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

62. The equipment used to send the text messages had the present capacity to transmit text messages en masse and did not function similar to a simple cellphone.

63. The calls and text messages were sent without human intervention.

13

64. Defendant's conduct was willful or knowing. Defendant knew or should have known that its text messages violated the TCPA.

65. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to between $500 and $1,500 for each and every text message.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed Stop Class)**

66. Plaintiff repeats and realleges paragraphs 1 through 58 of this Complaint and incorporates them by reference.

67. Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class after being told to stop texting.

68. These solicitation text messages were sent en masse.

69. Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed Stop Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**THIRD CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Stop Text Do Not Call Class)**

70. Plaintiff incorporates and re-alleges by reference paragraphs 1-58 as if fully set forth herein.

71. Defendant violated 47 C.F.R. §64.1200 by initiating calls/texts for telemarketing purposes to telephone subscribers such as Plaintiff and the Stop Text Do Not Call Class who were registered on the National Do Not Call Registry and who specifically told Defendant to

stop calling or texting them, and who received two more calls or text messages within a 12-month period from Defendant at least thirty (30) days after informing Defendant to stop texting them. Defendant sent these text messages without instituting procedures that comply with the minimum regulatory standards for maintaining a list of persons who request not to receive telemarketing texts from them or training its personnel in the existence and use of any such list.

72.     As a result of Defendant's unlawful conduct, Plaintiff and the Stop Text Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the Stop Text Do Not Call Class is each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

73.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Text Do Not Call Class.

**FOURTH CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Internal Do Not Call Class)**

74.     Plaintiff repeats and realleges paragraphs 1 through 59 of this Complaint and incorporates them by reference.

75.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

15

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

76.     Defendant sent marketing text messages to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the

minimum requirements to allow Defendants to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

77. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

78. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Demtchouk, individually and on behalf of the Class, prays for the following relief:

a. An order certifying the Class as defined above, and appointing Plaintiff as the representative of the Class and her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs to be paid into a common fund for the benefit of the class members;

c. An order declaring that Defendant's actions, as set out above, violate the TCPA;

d. An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class;

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Demtchouk requests a jury trial.

          Respectfully Submitted,

          **BELA DEMTCHOUK**, individually and on behalf of those similarly situated individuals

Dated: March 22, 2020          By: /s/ Ryan Peterson
          Ryan D. Peterson (#0389607)
          Peterson Legal, PLLC
          5201 Eden Avenue, Suite 300
          Edina, Minnesota 55436
          Phone: (612) 367-6568
          Fax: (612) 295-0415
          ryan@peterson.legal

          Stefan Coleman*
          law@stefancoleman.com
          LAW OFFICES OF STEFAN COLEMAN, P.A.
          201 S. Biscayne Blvd, 28th Floor
          Miami, FL 33131
          Telephone: (877) 333-9427
          Facsimile: (888) 498-8946

          Avi R. Kaufman*
          kaufman@kaufmanpa.com
          KAUFMAN P.A.
          400 NW 26th Street
          Miami, FL 33127
          Telephone: (305) 469-5881

          *Attorneys for Plaintiff and the putative Class*

          *\*Pro Hac Vice Motion forthcoming*